## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**RUDY SLACK,**

      **Defendant.**                **Case No. 05-cr-30133-DRH-7**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

## I.  INTRODUCTION

Before the Court is defendant Rudy Slack's Motion for New Trial (Doc. 456),[1] filed pursuant to **FEDERAL RULE OF CRIMINAL PROCEDURE 33**, to which the Government has filed its opposing Response (Doc. 462).  The jury found Slack guilty as to Counts 1, 6 and 7 of the Indictment (Docs. 424, 427 & 428).  The specific charges were as follows:

> Count 1 -  conspiracy to knowingly and intentionally manufacture, distribute, and possess with intent to distribute cocaine and a mixture or substance containing cocaine base, in the form of, or commonly known as "crack" cocaine, in violation of **21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A),** and **21 U.S.C. § 846**.

> Count 6 - knowingly and intentionally distributing diverse amounts of a mixture or substance containing cocaine, in violation of **21 U.S.C. §§**

---

[1]   The Court also notes it previously granted Slack an extension of time to file this Motion (*see* Doc. 440).

**841(a)(1) and 841 (b)(1)(C)**.

> Count 7 - knowingly and intentionally distributing a mixture or substance containing cocaine base, in the form of, or commonly known as, "crack" cocaine, in violation of **21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B)**.

Regarding the jury's finding of "guilty" as to Count 1, the Special Verdict did not find Slack guilty of conspiring to distribute 500 grams or more of a mixture or substance containing cocaine base (Doc. 425).  However, in a separate Special Verdict also regarding Count 1, the jury *did* find Slack guilty of conspiracy to distribute 5 grams or more, but less than 50 grams, of a mixture or substance containing cocaine base, in the form of, or commonly known as, "crack" cocaine (Doc. 426).  There was no Special Verdict rendered by the jury regarding the charges against Slack stated in Count 6.  As to Count 7, the Special Verdict found Slack guilty of knowingly and intentionally distributing 5 grams or more of a mixture or substance containing cocaine base, in the form of, or commonly known as, "crack" cocaine.  Slack also filed a Motion for Judgment of Acquittal (Doc. 446) as to Count 1, which the Court has denied (Doc. 486).  Slack currently awaits sentencing for his conviction, as well as resolution of this pending post trial motion.

## II.  LEGAL STANDARD

Under **FEDERAL RULE OF CRIMINAL PROCEDURE 33**, a defendant may move for a new trial.  Upon review, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." **FED. R. CRIM. P. 33(a)**.  If the basis for seeking a new trial is not due to new evidence, then the Court must determine if

a new trial is warranted because there exists a "reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." **United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006) (citing United States v. Berry, 92 F.3d 597, 600 (7th Cir. 1996))**.  A new trial may also be warranted where a "trial errors or omissions have jeopardized the defendant's substantial rights." **United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989) (citing United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir.1989))**.  Such a determination is completely within the Court's sound discretion . **Id. (citing United States v. Nero, 733 F.2d 1197, 1202 (7th Cir. 1984))**.  However, the Court should be mindful that the power bestowed by Rule 33 to grant a new trial should only be done in the "most 'extreme cases.'" **United States v. Linwood, 142 F.3d 418, 422 (7th Cir.1998) (quoting United States v. Morales, 902 F.2d 604, 605 (7th Cir.1990))**.

## III. <u>DISCUSSION</u>

Slack bases his Rule 33 Motion on the assertion that the verdicts were against the weight of the evidence and also that the Court erred in the following ways: (1) failing to suppress the wiretap evidence, (2) admitting testimony of DEA Special Agent John McGarry pursuant to **FEDERAL RULE OF EVIDENCE 701**, (3) admitting testimony of witness Donald Slack, (4) failing to give Slack's proposed jury instructions numbers 7, 8 and 9, which were cautionary instructions on witness credibility, (5) failing to give Slack's proposed theory of defense instruction number 12, (6) admitting testimony of witness Alan Taylor regarding alleged hearsay

statements made to him by Christy Woolsey, (7) failing to dismiss the indictment due to alleged speedy trial act violation, and (8) admitting testimony of witness Timothy Weddle.  The Court will now address Slack's arguments in like order.

## A.   Verdicts Against the Weight of the Evidence

As Slack also moved for a judgment of acquittal pursuant to **FEDERAL RULE OF CRIMINAL PROCEDURE 29(c)** (Doc. 446) regarding Count 1 based upon essentially the same grounds, he requests that if acquittal is denied, he alternatively seeks a grant of a new trial.  He also believes the verdicts finding him guilty as to Counts 6 and 7 were against the manifest weight of the evidence and therefore, warrant a new trial.

### 1.   Count 1

Count 1 was the conspiracy charge.   Slack states that the only Government witnesses questionably implicating him for selling narcotics did *not* offer enough evidence to prove that he was a member of the charged conspiracy.  Further, other Government witnesses Richard Pittman and Tamiesha Williams, co-conspirators who had already pled guilty, testified they were unaware of Slack's participation in the conspiracy.  In response, the Government argues that all it was required to show was "that Slack was aware of the common purpose and was a wiling participant [in the conspiracy]" (Doc. 462, p. 2).  It was not required to show all members of the conspiracy knew each others' identities.  Additionally, the Government asserts that wiretap evidence was used to reveal Slack's participation

in the conspiracy – namely his telephone calls to his half-brother, Richard Pittman, to warn him that the police were in the area so that Pittman could flee and the narcotics conspiracy could continue.

These arguments have been addressed at length in the Court's Order (Doc. 486) denying Slack's Motion for Acquittal (Doc. 446). Therefore, the Court need only analyze these arguments using a Rule 33 framework. As the Court previously found enough evidence that a reasonable juror could find Slack guilty beyond a reasonable doubt as to Count 1, there is no "strong doubt of guilt" as Slack suggests. This is not grounds to warrant a new trial.

### 2.   Count 6

Slack was found guilty as to Count 6 for distribution of cocaine. There was no specific quantity charged and no special verdict returned. Slack believes the evidence failed to demonstrate that witness Alan Taylor was not found in possession of cocaine when the police searched is pickup truck. Instead, Slack proffers that the evidence shows the seized narcotics actually belonged to Taylor's passengers, Gary and Leslea Ontis, as Taylor testified "he did not lie in his post-arrest telephone conversation with Defendant [Slack] when he told [him] that he got rid of the drugs [Slack] had given him before the police searched the pickup" (Doc. 456, p. 4).

In retort, the Government believes sufficient evidence existed to find Slack guilty as to Count 6 – the Government states "Taylor admits purchasing the cocaine from Slack and the cocaine was immediately recovered from Taylor's vehicle" (Doc. 462, p. 3). Reviewing the trial testimony in this regard, the Court does not see

how Slack's closing argument (as his Motion suggests) provided a "logical explanation of events," as it merely presented Slack's theory of defense.    Though it may be "logical," it is for the jury to decide whether to accept it as true.    Granting a new trial is not appropriate upon this basis.

####    3.    Count 7

Slack was found guilty as to Count 7 for distribution of 5 grams or more of "crack" cocaine (Docs. 428 & 429).    The evidence linking Slack to this sale came from the testimony of witness Eric Spruill.    A confidential informant working with the DEA made a controlled buy of a half ounce of cocaine from Spruill on November 1, 2004.    Spruill testified that Slack was his supplier.    Spruill testified that he went to Slack's house to purchase the cocaine so that he could then sell it to the informant.    While Spruill was waiting in Slack's residence, he observed Rudy Slack and his brother, Donald Slack, in the kitchen "cooking up" what appeared to be a large amount crack cocaine.    As the fumes became overpowering, Spruill testified that he had to step outside of the residence.    He also testified that later, Slack popped his head out the door and waived Spruill back inside the house, where he proceeded to sell Spruill a half ounce of crack cocaine for $550.00.

The Government points to additional wiretap evidence of a setup telephone call made by Spruill to Slack for the purchse of three grams of crack cocaine on February 19, 2005 (*see* Gov't Ex. 58 and Trial Transcript: Spruill 23:3-22).    There were further telephone calls introduced into evidence which served to demonstrate the drug relationship between Spruill and Slack (*see* Gov't Exs. 60 &

90).   Slack asserts that in contrast to the incriminating evidence, the officer conducting surveillance on the Slack residence that night testified he never saw Rudy Slack outside.   Further, Donald Slack testified he never dealt any drugs to Spruill and had a falling out with his brother, Rudy, and therefore did not have anything to do with him from September through December, 2004.   For these reasons, Slack believes the guilty verdict as to Count 7 was against the weight of the evidence.

Considering the evidence provided ample basis for the jury to find Slack guilty as to Count 7 beyond a reasonable doubt, the Court finds no grounds to warrant a new trial.

## B.     Suppression of Electronic Surveillance Evidence

Slack next challenges the Court's Order authorizing the Government to conduct electronic surveillance pursuant to **18 U.S.C. § 2518(1)(c)**.[2]   Prior to trial, Rollins, Jr. filed a Motion to Suppress the Contents of Electronic Surveillance and Evidence Derived Therefrom (Doc. 290), challenging whether the Order was properly granted in accordance with the statutory requirements.   A motion hearing was conducted on January 4, 2007.[3]   Specifically, Slack asserted that the application and affidavit submitted by the Government requesting a Title III telephone intercept order was insufficient under **§ 2518(1)(c)**'s requirement to show necessity by specifically

---

[2]   **18 U.S.C. § 2518(1)(c)** requires that the application and affidavit provide a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

[3]   Similar motions were also filed by co-defendants Rollins, Sr. and Rollins, Jr.   Slack and Rollins, Sr. thereafter joined Rollins, Jr. in the January 4, 2007 hearing.

demonstrating the failure or infeasibility of other previously attempted investigative techniques.  Denying the Motion to Suppress, the Court found that the application and affidavit sufficiently met the requirements of **§ 2518(1)(c)**.

Wiretaps are not required to be the *last* resort in an investigation, but also should not be the first method used either.  ***United States v. McLee*, 436 F.3d 751, 763 (7th Cir. 2006) (citation omitted)**.  Because the Government does not carry a heavy burden to meet the requirements of showing necessity for a wiretap order under **§ 2518(1)(c)**, a court order authorizing the wiretap can be issued for a variety of reasons.  ***Id.* (citations omitted)**.  In the affidavit submitted by United States Drug Enforcement Agency ("DEA") Special Agent John McGarry (lead investigator), it listed the other methods of investigation techniques used prior to requesting a wiretap order: use of confidential sources, consensual telephone calls, surveillance, administrative subpoenas, telephone records and dialed number recording (Doc. 278, p. 3).  Other investigative techniques were rejected due to their inadequacy or because they would not be feasible given the particular circumstances of the investigation: body wires/monitoring devices, mobile tracking devices, closed circuit television cameras, trash seizures, Grand Jury subpoenas, undercover agents, target/associate interviews, search warrants, police records, pen register, SINS and trap & trace (*Id.*).

The Government's reasons for seeking the wiretap were further expounded upon through Agent McGarry's testimony given during the suppression

hearing.   Agent McGarry demonstrated, via his affidavit and later through his testimony, why the wiretap was necessary in order to secure evidence that the targeted subjects (Slack and co-defendants) were engaged in illegal activity, as well as reveal the "true scope and nature of the offenses and the unknown participants in them" (*Id.* at 4).  A wiretap that enables investigators "to gauge the depth and scope of [a] conspiracy" meets the requirements under **§ 2518(1)(c)**.  ***United States v. Fudge*, 325 F.3d 910, 919 (7th Cir. 2003)**.

Slack offers nothing further in way of legal argument or evidence to support his assertion that the Court's ruling on his Motion to Suppress was erroneous.   The Court still finds that the wiretap application and affidavit were carefully considered and found to have sufficiently met the statutory requirements warranting the wiretap order.   The Government adequately demonstrated how it was reasonably unlikely that the alternate methods of investigation would work and that the wiretap was the only practical method for the investigators to make their case involving a number of conspirators.   Further, if the wiretap Order was properly granted in accordance with **§ 2518**, as the Court finds it was, Slack's privacy rights were not improperly violated.   As such, a new trial cannot be granted as the Court does not find its prior ruling erroneous.

## C.    DEA Special Agent McGarry

Special Agent John McGarry was the lead DEA agent for the investigation of co-defendants' drug distribution conspiracy.   Part of his duty as lead

investigator required him to oversee all wiretapped telephone calls.  During trial, Rollins, Jr. filed a Motion in Limine to Exclude Expert Testimony of Undisclosed Government Witness (Doc. 342).[4]  Rollins, Jr. sought to bar this testimony as it was not disclosed pursuant to Slack's Motion for Disclosure of Expert Testimony (Doc. 276).

In particular, Slack's argument centers around the assertion that Agent McGarry was an "expert" witness for the Government, in that he testified as to what he believed "was occurring in the [wiretapped] conversation, including his beliefs as to which specific drugs, amounts and prices were being discussed in each conversation" (Doc. 450, p. 5).   In other words, this "specialized" knowledge regarding code words for certain narcotics constituted expert testimony under FEDERAL RULE OF EVIDENCE 702.  On the other hand, the Government asserted Agent McGarry's testimony was actually lay witness testimony under FEDERAL RULE OF EVIDENCE 701, as he merely provided his "impressions" of what he had personally observed from the wiretapped conversations.  Therefore, because the Government never offered Agent McGarry as an expert witness, it does not believe there was any lack of compliance with the disclosure requirements of FEDERAL RULE OF CRIMINAL PROCEDURE 16.

Under **Rule 701**, lay opinion testimony must be limited to the

---

[4]  Co-defendant Talia Pittman also filed a similar Motion (Doc. 358).  At trial, both Motions were argued simultaneously, with the remaining co-defendants, including Slack, joining in the Motions.

observations of the witness "that are 'not based on scientific, technical, or other specialized knowledge within the scope of **Rule 702**.'" *United States v. Conn*, **297 F.3d 548, 553 (7th Cir. 2002)(quoting** FED. R. EVID. **701)**.  The court must closely scrutinize lay witness testimony to ensure it does not encroach upon the realm of expert testimony, especially if that witness has not previously been identified as an expert witness.  *Id.*  In *Conn*, the Seventh Circuit found the testimony of an ATF agent went beyond that of a lay witness because "[h]e was asked to draw upon his accumulated knowledge and to provide information to the jury about the appropriate characterization of Mr. Conn's firearms . . . ."  *Id.* **at 554-55**.  However, the Seventh Circuit acknowledged it was possible for an agent to testify as a lay witness if based only upon his personal participation in the investigation of the conspiracy.  *Id.* **at 555 n.3 (citing** *United States v. Miranda*, **248 F.3d 434, 441 (5th Cir. 2001))**.


This Fifth Circuit case cited in *Conn*, although not binding precedent, is nevertheless insightful and on point with the issues raised by the Motions in Limine.  In *Miranda*, the FBI Special Agent involved with the investigation of the conspiracy gave testimony regarding the meaning behind various code words used by the various callers to describe certain narcotics.  *Miranda*, **248 F.3d at 441**.  Defense counsel challenged the Agent's testimony, arguing it was actually **Rule 702** expert testimony and the Agent was unqualified to testify as an expert.  The Government argued the Agent's testimony was being offered as **Rule 701** lay witness

testimony.  The Fifth Circuit agreed with the Government, stating as follows:

> [The Agent's] extensive participation in the investigation of this
> conspiracy, including surveillance, undercover purchases of
> drugs, debriefings of cooperating witnesses familiar with the drug
> negotiations of the defendants, and the monitoring and
> translating of intercepted telephone conversations, allowed him
> to form opinions concerning the meaning of certain code words
> used in this drug ring based on his personal perceptions.  We
> therefore hold that [the Agent's] testimony was admissible
> pursuant to Rule 701 and that the district court did not abuse its
> discretion in admitting his testimony.

*Id.*

During trial, the Court applied the same reasoning as the Fifth Circuit.
The Court limited Agent McGarry's testimony to his personal perceptions and
information acquired solely from his extensive participation in the investigation of the
conspiracy.  Allowing this testimony under **Rule 701** was permissible because the
Court observed no consistency between related criminal drug conspiracy cases in
regards to the narcotics code words used among the co-conspirators.  Instead, the
code words seem individualized for each particular conspiracy, seemingly, at times,
the co-conspirators come up with code terms "on the fly."  Therefore, there is no
universal narcotics "code language" that one may study and become familiarized with
based upon training and experience.  Thus, the Court denied the Motion because
"each group of conspirators is different and there's no way to really apply your
training and your experience to figure out what each group's terminology means.  It's

just guesswork each and every time . . ." (Trial Transcript, January 26, 2007).[5]

    Although Slack argues that McGarry's impressions were not "rationally based on the perception of the witness," as required by Rule 701 (Doc. 456, p. 6), Slack fails to demonstrate how the Court's decision to allow Agent McGarry to testify as a lay witness was erroneous.  In this case, the Court found there was no "universal code" with which one could study or become proficient in over time.  The Court also limited the testimony to Agent McGarry's own perceptions with the investigation regarding the conspiracy at issue in this case only.  As the Government states, "[Agent] McGarry . . . was involved in the telephone intercepts from the very beginning and became thoroughly familiar with the individual participants in those conversation[s]" (Doc. 462, p. 4).  Slack argues that Agent McGarry's testimony, which he argues was based also upon inadmissible hearsay, did not help the jury, but rather "usurped the jury's function" in drawing their own inferences (Doc. 456, p. 7).  This issue was thoroughly argued at trial and the Court, in its discretion, deemed that this was admissible lay witness testimony.  Furthermore, the jury was advised at the time of the testimony that even if the jurors believed the agent's testimony regarding the meaning of the language used in the tapes, they would each still have to decide for themselves the meaning of the words used by the people speaking on the tapes.  Thus, the Court remains unconvinced that Agent McGarry's testimony caused Slack unfair prejudice.  Slack's argument, therefore, is not well-taken.

---

[5] The Court notes that there are no page numbers as a transcript for this portion of the trial was never ordered and therefore, the quote is taken from a rough draft of the real time electronic transcript.

Additionally, because the Court does not find Agent McGarry's testimony constituted **Rule 702** expert testimony, it also finds the Government did not fail to properly disclose under **Rule 16**.  Even had this testimony been inadmissible, the Court does not find it would have prejudiced the jury's verdict as there was other witness testimony provided to decipher the code language, amounts and pricing of the narcotics, from which the jury could have derived its finding of guilt.

**D.      Testimony of Donald Slack**

Donald Slack, Rudy Slack's half-brother (both having the same father), testified as a Government witness.  Slack made a motion during trial to strike Donald Slack's testimony regarding anything from September through December 2004, as Slack asserts Donald Slack's testimony revealed he was "not involved with any drug-dealing with [Slack] in September, October, November and December 2004" (Doc. 456, p. 9).  The Court denied the Motion, finding some of the testimony referred to dates that did, in fact, match up with the charged conspiracy and therefore, could serve to link Slack as a co-conspirator.  Therefore, the Court allowed Donald Slack to testify to the extent the evidence could tie into some aspect of the charged conspiracy, as it ultimately remained an issue of fact for the jury to decide.  However, Slack maintains that the evidence showed Slack was instead, a member of a *separate* conspiracy and not the conspiracy at issue in this criminal case.  Thus, Slack believes that evidence regarding this "other conspiracy," provided via Donald Slack's testimony, should not be admissible, because it was not evidence

"inextricably intertwined" with the conspiracy tried in this case.

In response, the Government points to testimony given by Donald Slack regarding multiple drug transactions with Rudy Slack, within ten days of the dates of the charged conspiracy (from September, 2003 to August, 2005).  Both Donald Slack and Rudy Slack were seen by witness Eric Spruill, in Slack's residence, cooking powder cocaine into "crack" cocaine.  The testimony of Alan Taylor and Eric Spruill served to provide evidence for the jury to find Slack guilty as to Counts 6 and 7.  The testimony provided by Donald Slack bolstered this evidence, and as stated by the Government, served to "provide[] the jury with sufficient background for the complete . . . story for the jury, explaining how the two Slack brothers knew each other's drug business, worked together, and eventually ended up together in Rudy Slack's kitchen cooking powder into crack as testified by Eric Spruill" (Doc. 462, p. 7).  This was enough for the Court, in its discretion, to allow the testimony.  The fact that Slack believes Donald Slack's testimony may have provided information regarding a "separate" conspiracy or a time frame when the two were allegedly not on speaking terms is an issue of fact for the jury to decide.  These assertions, when coupled with testimony showing otherwise, will not serve as grounds to exclude the testimony or warrant a new trial.

**E.     Jury Instructions Regarding Witness Credibility**

Slack asserts the Court erroneously denied his proposed jury

instructions numbers 7, 8 and 9,[6] which cautioned the jury regarding the credibility

---

[6] **Slack's proposed instruction number 7 read**:

You have heard witnesses who testified that they were actually involved in planning and carrying out the crimes charged in the indictment. The law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction, if the jury finds that the testimony established guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of accomplices.

You should ask yourselves whether these so-called accomplices would benefit more by lying, or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the witness was motivate by hopes of personal gain, was the motivation one which would cause him to lie, or was it one which would cause him to tell the truth? Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the accomplice witnesses.

**Slack's proposed instruction number 8 read**:

There has been evidence introduced at the trial that the government called as a witness a person who was using or addicted to drugs when the events he/she observed took place [or who is now using drugs]. I instruct you that there is nothing improper about calling such a witness to testify about events within his/her personal knowledge.

On the other hand, his/her testimony must be examined with greater scrutiny than the testimony of any other witness. The testimony of a witness who was using drugs at the time of the events he/she is testifying about, or who is using drugs [or an addict] at the time of his testimony may be less believable because of the effect the drugs may have on his ability to perceive or relate the events in question.

If you decide to accept his/her testimony, after considering it in light of all the evidence in the case, then you may give it whatever weight, if any, you find it deserves.

**Slack's proposed Instruction number 9 read**:

In this case, there has been testimony from a government witness who pled guilty after entering into an agreement with the government to testify. There is evidence that the government promised to bring the witness's cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict a defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from any ordinary witness. A witness who realizes that he/she may be able to obtain his/her freedom, or receive a lighter sentence by

of certain witnesses, such as co-conspirators who had pled guilty and drug addicts, requiring the jury give these witnesses greater scrutiny.  Rather than giving Slack's proposed instructions, the Court relied on Instruction numbers 4 and 8.  Instruction number 4 was the Seventh Circuit pattern instruction 1.03, dealing with assessing witness credibility.[7]   Instruction number 8 was the Seventh Circuit pattern instruction 3.13, which provided the jury view with caution any testimony from a witness who had been given immunity or other benefits by the Government or who had been involved in the same charged crime.[8]

---

giving testimony favorable to the prosecution, has a motive to testify falsely.  Therefore, you must examine his/her testimony with caution and weigh it with great care.  If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any you find it deserves.

[7] **Instruction No. 4, 7th Cir. Pattern Jury Instruction 3.13 read:**
 You are to decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of each witness.
 In evaluating the testimony of any witness, you may consider, among other things:
 - the witnesses's intelligence;
 - the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;
 - the witness's memory;
 - any interest, bias, or prejudice the witness may have;
 - the manner of the witness while testifying and
 - the reasonableness of the witness's testimony in light of all the evidence in the case.

[8] **Instruction No. 8, 7th Cir. Pattern Jury Instruction 3.13 read:**
 You have heard testimony from witnesses who:
   (a)  received immunity; that is, a promise from the government that any testimony or other information he/she provided would not be used against him/her in a criminal case.
   (b)  received benefits from the government in connection with this case, namely:
     (i)   an agreement not to prosecute; and/or
     (ii)  the promise that the government would consider the witness's cooperation and testimony in determining whether or not to file a motion on the witness's behalf to reduce his/her sentence.
   (c)  stated that he/she was involved in the commission of the offense as charged

The Court found that the Instructions 4 and 8 adequately admonished the jury regarding witness credibility and chose to give the pattern Seventh Circuit instruction Slack's proposed instructions, which were not pattern Seven Circuit instructions.  It is within the trial court's discretion to decline a "special caution" instruction and opt to use the standard pattern instruction on witness credibility. *See United States v. Jordan*, 223 F.3d 676, 692 (7th Cir. 2000).  Slack does not further demonstrate how refusing to use his proposed instructions "seriously affect[ed] the fairness of the judicial proceedings" or his substantial rights.  *United States v. Van Waeyenberghe*, 481 F.3d 951 (7th Cir. 2007)(quoting *United States v. Tolliver*, 454 F.3d 660, 664 (7th Cir. 2006)(internal quotes and citation omitted)).  As such, he is not entitled a new trial regarding this argument.

**F.    Jury Instructions on Slack's Theory of Defense**

In addition to his proposed instructions 7, 8 and 9, Slack also asserts that he was denied a fair trial when the Court refused to give his proposed instruction number 12, which described his theory of defense.[9]  Essentially, Slack's

---

against the defendant.
    (d)  has pleaded guilty to an offense arising out of the same occurrence for which the defendant is now on trial.  His/ her guilty plea is not to be considered as evidence against the defendant.
You may give his/her testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

[9]  **Slack's proposed instruction number 12 read** (emphasis added):
    Defendant Rudy Slack (a.k.a. Enoch Smith) has pleaded "Not Guilty" to the charges contained in the indictment.  These pleas of not guilty put in issue each of the essential elements of the offenses as described in these instructions and impose on the government the burden of establishing each of these elements by proof beyond reasonable doubt.
    Defendant Rudy Slack, moreover, contends **he is not guilty of the offenses**

theory of defense was that his use and distribution of marijuana had been mistaken by the Government for his participation in the charged conspiracy, which instead involved cocaine and "crack" cocaine.  Failing to present this theory of defense in the form of a jury instruction, Slack argues, violated his right to a fair trial by allowing jurors to convict him without requiring the Government to prove beyond a reasonable doubt that Slack had distributed cocaine and "crack" cocaine (Doc. 456, p. 13, citing **United States v. Paters**, **16 F.3d 188, 190 (7th Cir. 1994)** and **United States v. Chavin**, **316 F.3d 666, 670 (7th Cir. 2002)**).  Contrary to Slack's assertion, the Government contends the evidence presented during trial clearly showed Slack was involved with trafficking cocaine and thus, his theory of defense is not supported by the evidence.

> The Seventh Circuit provides:

> An instruction on a defendant's theory of defense may only be given to the jury if the defendant proposes a correct statement of the law; the defendant's theory is supported by the evidence; the defendant's theory of defense is not part of the charge; and the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the defendant a fair trial.

**Al-Shahin**, **474 F.3d at 947 (citing United States v. Briscoe,** **896 F.2d 1476, 1512 (7h Cir. 1990)**).

The Court finds ample evidence existed to support a finding that Slack's proposed

---

*charged because he was only involved with possessing, using, and distributing marijuana*.  In order to find Defendant Rudy Slack guilty of any offense in these jury instructions, you must find beyond a reasonable doubt that he committed that offense with the controlled substance or substances named in the instruction for that offense (cocaine and cocaine base in Instruction No. ____, cocaine base in Instruction No. _____, and cocaine in Instruction No. _____ ).

instruction number 12 was inaccurate based upon evidence indicating Slack had also dealt with cocaine and "crack" cocaine.  Accordingly, the Court cannot grant a new trial in this regard.

**G.     Testimony of Alan Taylor**

Alan Taylor testified as a witness for the Government; Slack specifically objects to his testimony regarding statements made by Christy Woolsey as being inadmissible hearsay.  Taylor testified that Woolsey had purchased "crack" from Slack – that he was her dealer.  Slack also objects because he believes this testimony improperly allowed evidence regarding Slack's sales of "crack."  In other words, Taylor never testified to buying "crack" from him, so without the hearsay statements, there would be no evidence presented of "crack" sales.  The Government argues that it was not offering this testimony for proving the truth of the matter asserted (that Woolsey got crack from Slack) but offered it to show how Taylor knew Slack.  Taylor's testimony further explained that because he knew Woolsey dealt with Slack, he began to work for Slack and purchased cocaine from him as well.

The Court agrees with the Government that the overall purpose of Talyor's testimony was to show how his relationship with Slack evolved.  Aside from this fact, Slack does not show how this caused him substantial prejudice.  The Court finds this argument for a new trial insufficient.

**H.     Speedy Trial Act**

Slack believes the Court erred when it denied his pretrial Motion to Dismiss Indictment Because of Violations of the Speedy Trial Act (Doc. 289).  The

Court denied this Motion (Doc. 312), finding the "ends of justice" findings for prior continuances of trial were sufficient under the Speedy Trial Act and Seventh Circuit law so that excludable time had not yet run under the Act.  In his Rule 33 Motion, Slack merely revisits the same arguments addressed and denied in his pretrial motion.  Therefore, the Court adheres to its original ruling and finds no grounds warranting a new trial.

**I.      Testimony of Timothy Weddle**

Lastly, Slack asserts that the Court erred in failing to exclude the testimony of Timothy Weddle.  This argument stems from the Government's late disclosure of Weddle's proffer to government agents.  Although the Court did not favor the late disclosure, even inadvertent late disclosure, it found:

> **18 U.S.C. § 3500(a)** does not require the Government to provide for a statement or report from one of its witnesses until *after* said witness has testified at trial.  While it is within the discretion of the Court to order disclosure prior to trial, it is not a requirement.  Further, **Rule 16** of the Federal Rules of Criminal Procedure does not provide for this type of disclosure. Therefore, [Rollins, Jr.'s] argument that he is entitled to such information regarding Weddle is not well-taken . . . the rule and the statute do not require disclosure until after testimony and this Court will not require more than what is required by rule and law.

(Doc. 335 - Court's January 19, 2007 Order denying Motion to Continue by defendant Rollins, Jr.).

Thus, the Court allowed Weddle's testimony.  This holding aligns with Seventh Circuit law that exculpatory information must be disclosed by the Government, but disclosure can properly be made during trial without amounting

to a **Brady** violation, "as long as the defendant is not prevented from having a fair trial." **See, e.g., Kompare v. Stein, 801 F.2d 883, 890 (7th Cir. 1986)(citing United States v. Allain, 671 F.2d 248, 255 (7th Cir.1982))**.

Slack also argues that because Weddle testified regarding the fact that he was confined in Alton City Jail, along with Slack, this wrongly allowed the jury to infer "that Weddle was an associate of [Slack's] in illegal drug dealing before they were in jail" (Doc. 456, p. 15). As such, Slack believes allowing this type of testimony denied him a fair trial. However, Slack fails to cite to the trial transcript to specifically show Weddle's testimony regarding his association with Slack at the Alton City Jail. Thus, there is nothing to support his assertion of improper jury inference or demonstrate how this substantially affected the outcome of the trial. Again, this does not adequately present grounds warranting a new trial.

### IV.  CONCLUSION

In sum, the Court finds Slack's Motion for New Trial (Doc. 456) fails to present adequate legal grounds to warrant the relief sought under **Rule 33**. Accordingly, said Motion is **DENIED**.

**IT IS SO ORDERED.**

Signed this 24th day of May, 2007.

/s/      David  RHerndon
**United States District Judge**